JAMES CLEMENS, Jr., vs. ELIZABETH W. COLLINS.

1. An instruction directing the jury to find for the plaintiff, if he has proved the material facts set forth in either count of his declaration, though somewhat singular, is not sufficient to authorize the supreme court to set aside the verdict.

2. If, when a note matures in the hands of an assignee, the maker is so insolvent that a suit against him would be unavailing, it is not necessary to bring it, before suing the assignor.

3. It is not with us, as at common law. A finding by a jury with us of a general verdict, and assessing general damages will answer, if there be one good count in the declaration.

## APPEAL from St. Louis Criminal Court.

GAMBLE & BATES, for plaintiff in error.

I. A new trial ought to have been granted because the verdict is against law in this:

Clemens, Jr., vs. Collins.

1st. The right of action at all, in such cases, is given by the statute, and is contingent in its creation, depending upon the performance of a certain precedent, that is, due diligence on the part of the holder, as against all parties and funds primarily liable. This appears to be settled in Collins vs. Washburton and Kirbey, 3 Mo. R. 202 ; and Deleny's Exr. vs. Kerr, 10 Missouri R. 553.

In this phrase of the case, there is no necessity to enquire how much the party might have gotten by his activity. The cases cited turned only upon the question of diligence. Diligence was a prerequisite to the right of action.

In this case, the holder of the note did not exhibit the claims at all against the estate of John Kerr, deceased, and refused, though urgently requested, to exhibit it against the trust fund. The suit brought against Aug. Kerr, was improperly brought and delayed in judgment. And yet, it appears in the record (in the deed of assignment) that Augustus Kerr had individual estate not conveyed to the trustee, which, for aught that appears may have been misapplied during the delay caused by the error in bringing the suit.

As to the assigned fund, it was the duty of the holder not only to exhibit his claim there, but to see that the trustee did his duty in regard to the fund. Diligence, embraces skill as well as time.

2nd. It was against law also, in this (beyond the instruction prayed by the defendant) that the holder was bound to prove the assigned fund whether much or little could be obtained from it. When this case was up before this court determined that it was her duty to pursue that fund, and so no action accrued against the assignor. It is not that the assignor is seeking to cast off an action fixed upon him, but the right of action never existed.

II. The verdict is against the instructions, and, 1st, the verdict is upon all three counts whereas the second instruction required the jury to say on which count they find for the plaintiff. This might be very important to the defendant, because we think confidently, that some of the counts (if not all) are bad. 2nd, the third instruction is directly violated by the verdict. If it be law, as decided heretofore in this case, that the party must pursue the assigned fund, then it is obvious that the requirements of law were not fulfilled.

3rd. The 4th instruction is also violated by the verdict, for it is apparent that the holder refused to exhibit and prosecute the note against the trust fund ; and that if she had done so, she might have obtained a considerable sum of money. The refusal, on request, to present the note against the assigned fund is an oppression and fraud upon Clemens. While he is sought to be held liable as assignor, he is obstinately denied all chance of indemnity.

III. The two instructions given for plaintiff, were both erroneous, and 1st, the first (3rd as asked by plaintiff) goes only on the ground of the insolvency of the firm, and the members of it living and dead; and omits entirely the assigned fund, and for that reason is wrong.

It is also wrong, as tending to mislead the jury, and we believe did mislead them, by the phrase general verdict, which made them disregard the second instruction given for the defendant. Whereas the term general verdict, as legally used only in contradistinction to special verdict. It does not mean merely a verdict upon all the counts of a declaration, which may be either general or special.

2d. The second instruction (the seventh as asked) is also erroneous, because there is no count in the declaration which makes mention of the assigned fund, or of any diligence to get the money out of it.

## Leslie, Lord & Haight, for defendants in error.

I. 1st. That the jury passed upon the whole matter, under the law laid down by the court as asked for by the plaintiff in error, and their verdict will not be disturbed by this court.

2d. A large discretion rests with the judge who tries the case in the court below, and he having expressed himself satisfied with the verdict, this court ought to let it stand: Graham on new trials, 405.

3d. The jury by their verdict found the truth of every fact alleged in all the counts in the declaration, and the judgment is in accordance with the finding.

The opinion of this court in this same case, 11 Mo. 320, is relied upon to sustain this verdict: Also case of Mullen vs. Pryn, 12 Mo., 307.

If the counsel for plaintiff in error complained that the verdict was general and against the instruction of the court directing the jury to state upon which count of the declaration they found, we say:

1st. The court cannot refuse a general verdict if the jury will find it: Trials *pnr pais* 233, 1 note.

2d. The R. S., 1845, sec. 7, art 7, page 831, declares that when there are several counts in a declaration, and entire damages are given, the verdict shall be good notwithstanding one or more of such counts shall be defective. This enactment abrogated the common law rule, that where the damages were entire on a declaration containing several courts, some good, some bad, the judgment should be arrested, because the court could not tell whether the finding was on the good or on the bad counts. Now in a declaration when all the counts are good, such instruction was improper, if it was intended to convey the idea to the jury that they must state which particular count they found on.

The circuit court cannot legislate away the force of the above enactment.

But even if correct, the instruction has not been violated, nor have the jury misunderstood the instructions asked and given on the part of the defendant in error, to-wit: That if all the facts in the declaration were true, to find a general verdict for the plaintiff, the jury have found all the facts in all the counts true, (and the evidence fully sustains the finding) and so have stated which count they found on by finding upon all.

As to Mr. Bates' notion of the liability of an assignor of a non negotiable note, see Story on notes, sec. 473, p. 587.

Our statute has not created the liability of the assignor, it has modified it. At Common law, Mr. Clemens, the plaintiff in error, under the circumstances of this case, became an absolute guarantor of the payment of the note: See Story sec. 473, cited above.

ADDITIONAL.

Recurrence to the evidence in the record will show that the court and jury kept within the rule of this court, as laid down in the cases of Clemens vs. Collins, 11 Mo. R., 320; Ruketoan & Halt vs. Wood & Co., 10 Mo. R., 547.

RYLAND, J., delivered the opinion of the court.

This case has been once before this court, and was reversed and remanded, a trial was again had and judgment rendered for the plaintiff, the present appellee.

The case is reported in the 11th vol. Missouri Reports, page 320. It was reversed as appears from the reported decision on account of an instruction given by the court below for the plaintiff.

This instruction was not asked for nor was any similar instruction given for plaintiff on the second trial.

We shall again state the material facts of this case, and also insert the instructions given, as they appear by the record and proceedings now before this court.

The facts have been so fully set down in the statement made by Mr. Lord, one of the counsel for the appellee, that we shall copy his statement substantially.

"This was an action brought by Elizabeth W. Collins against James Clemens, Jr., as assignee of a non negotiable note.

The declaration contained three counts. The first count alleged, that John Kerr and Augustus Kerr on the 4th day of November, 1843, made their promisory note and thereby promised to pay James Clemens or order $3,230 56 with interest at ten per cent, six months after date, and that said note was duly assigned to Elizabeth W. Collins. That at the maturity of said note John Kerr was deceased and his estate insolvent, and continued so insolvent up to the time of the commencement of this suit, &c. That suit was brought against Augustus Kerr at the next term of the court, after said note matured, and prosecuted to find final judgment, and execution sued out thereon and returned *nulla bona*.

The second count alleged that John Kerr and Augustus Kerr, partners in business under the name of J. & A. Kerr, on the 4th day of November, 1843, made their note payable to James Clemens, Jr., or order, for the sum of $3,230 56, six months after date, with interest at ten per cent, &c. That said note was duly assigned to said Elizabeth W. Collins, that at the maturity of said note, John Kerr was dead and his estate insolvent, &c. That suit was brought by said Elizabeth W. Collins, against Augustus Kerr as surviving partner of J. & A. Kerr, at the next term of the court after said note matured, prosecuted to find judgment, and execution sued out thereon against said Augustus Kerr as surviving partner of said J. & A. Kerr, which was returned *nulla bona*.

The third count set forth, that John Kerr and Augustus Kerr during the life time of said John Kerr, partners, doing business under the name of J. & A. Kerr on the 4th day of November, 1843, made their certain promissory note in writing and thereby promised to pay to the order of James Clemens, Jr., the sum of $3,230 56 with interest at ten per cent, six months after date. That said note was duly assigned by said Clemens to Elizabeth W. Collins; that at the maturity of said note John Kerr was deceased and his estate so insolvent, that a suit would have been unavailing, &c. That said Augustus Kerr when the said note became due, was insolvent, and continued so insolvent up to the time of the commencement of this suit, that a suit would have been unavailing, &c." Plea general issue.

Upon the trial of the case, the note and protest and assignment on the back of note was read. Record of common pleas of judgment of Elizabeth W. Collins vs. Augustus Kerr, survivor of firm of J. & A. Kerr, read, showing that suit was commenced against Kerr at September term of common pleas, in 1844, the note maturing in May 1844. Plaintiff then produced and read an execution issued upon the judgment

in the case of Collins vs. Augustus Kerr, survivor of J. & A. Kerr, with the return of *nulla bona,* by which it appeared, that execution was issued on the 9th of October, 1845, returnable at the February term, 1846. A certified abstract of allowances from the probate court, against the estate of John Kerr, deceased, shewing about $9800 proved up against said estate—also a certified copy of accounts of B. Allen, executor of John Kerr; and also a certified copy of the accounts of Jas. Clemens, Jr., as executor of B. Allen, shewing a small balance in the hands of Clemens as executor of Allen, who was executor of the estate of John Kerr.

The plaintiff then proved that the note in question was made by J. & A. Kerr and endorsed by James Clemens, Jr., and was given to Elizabeth W. Collins for money lent, to the Kerrs, for which Mr. Clemens was security. This witness also testified, that he was a partner of John Kerr at the time of his death, and that his estate at the time of his death was insolvent; he also said, that at the time of the death of John Kerr, the estate of J. &. A. Kerr was notoriously insolvent. In May, 1844, the estate of J. & A. Kerr was so insolvent that a suit against it would have been unavailing. Mr. Wickliff then testified on the part of the plaintiff, as to the circumstances under which the note was given to Mrs. Collins, and also that upon application after the note matured to B. Allen, executor of J. Kerr and assignee of the estate of J. & A. Kerr, he was informed by Allen, that the estate of John Kerr was not worth a cent, and he had better sue at once.

George Collier testified, that the estate of John Kerr, deceased, was insolvent, when the note in question matured, and that the estate of J. & A. Kerr was insolvent, that he held a large amount of debts against the Kerrs, and enquired of Allen, the representative of the estate, as thinking he knew most about them and was told by B. Allen that it was not worth while to present his claim.

Col. J. B. Brant, Joseph Charless, Asa Wilgus, Andrew Christy, John B. Shepley, John F. Darby, J. B. Crockett gave testimony substantially to the same effect.

The defendant then gave in evidence a deed of trust from A. Kerr to B. Allen with a schedule annexed. By this deed Augustus Kerr, as surviving partner of J. & A. Kerr and A. & G. W. Kerr assigned to Allen a large amount of real estate in trust for the benefit of the creditors of the two firms, setting forth the incumbrances upon the real estate, and providing for the payment of the taxes, interest, &c., upon specific liens.

There were some lands mentioned in said deed lying in different

parts of the State (out of this city) and some lying in Iowa and Illinois; some old accounts and notes were also assigned, being the same referred to by Mr. Peters in his deposition as old and of little value.

C. S. Rannels then testified on the part of defendant, that he was appointed trustee under the deed of trust made by A. Kerr to B. Allen, after the death of Allen. That he got the. books and `papers from Clemens, executor of Allen, about a year and a half after his appointment. That he had disposed of every thing of value and collected every thing he knew of except a disputed claim of about $1000 against Jas. Clemens, Jr., as executor of B. Allen. The property was much scattered, lying in the south-west and north-east corners of Missouri, in Illinois and in Iowa. That the assigned lands were put up for sale by Allen in February 1845 and were bought in by Mr. Campbell to prevent a sacrifice. That the lands were sold by him, in December 1848 and brought more than they would have brought in 1844. That he took great pains in selling the lands, sent messengers to various parts and fixed on a good season for country people to come in. That he had received from the estate in all, the gross sum of about $10,000. Nothing more of value will be realized. The debts proved up before Mr. Allen amounted to about $92,000. About $20,000 of these were specific liens, and said his dividend was made on about $69,000. There was a considerable amount of claims not proved up, the gross amount of expenses will be about $1000. This charge ought to be about $15,000.

This witness further said, that the estate would not have brought much without extraordinary exertions, which he therefore used. He also said that he had paid ten per cent. the dividend being on the face of Mr. Allen's allowance, without interest.

Mr. Cobb proved that he was employed by Mr. Allen, to assist him, and that at the request of Mr. Clemens, he called upon Mr. Wickliff, who then held the note, and requested him to present the note to Mr. Allen for allowance against the estate of J. & A. Kerr, that Mrs. Wickliff declined to do so.

On the part of the plaintiff it was proved by S. Knox, Esq., that he attended both sales of the assigned property. At the sale in 1845, it brought a trifle; sold better in 1848; he purchased a lot upon representations made to him at $400. I think he paid $200 too much.

Mr. Wickliff said there had been a great advance in the price of land in the last few years—land in Illinois bought in 1843, at $10, is now worth $50 per acre. This was all the testimony.

The following instructions were then given on the part of the defendant.

44

1. If the jury find for the defendant, they should say so in their verdict and need say nothing more.

2. But if the jury find for the plaintiff they ought to state in their verdict, on which count of the declaration they so find.

3. The note sued on, is not a negotiable note; and the assigned, Mrs. Collins, is not legally entitled to sue Clemens the assignor by reason of his assignment of the note until the assignee has complied with the requirements of the statute, and has used due diligence in trying to collect the debt from the makers, of the note, and out of their property liable to the debt.

4. If the jury believe from the testimony, that Augustus Kerr one of the makers of the note, assigned and set over to a trustee a large amount of property for the payment of the debts of J. & A. Kerr, including this note, that said property remained in the hands of the trustee at and after the maturity of this note, that the holder of the note was in due time notified and requested by Clemens the assignor to exhibit the same against the fund in the hands of the trustee and refused to do so; and if the jury also believe, that the assignee of the note, by exhibiting it before the trustee and presenting the claim with diligence against the trust fund, might have recovered a material part of the said debt, then the defendant ought to be acquitted of this action.

On the part of the plaintiff two instructions were given: 1st, "If the plaintiff has proved the material facts set forth and alleged in either count of her declaration, she is entitled to a verdict for the amount of the note and interest. 2nd, if the jury believe from the evidence that when the note in question of J. & A. Kerr matured, the firm was so insolvent, and the individual members and the estate of the deceased partner were also so insolvent, that a suit would have been unavailing, they will find a general verdict for the plaintiff."

A verdict was found for the plaintiff; and the defendant moved for a new trial, which being overruled, he brings the case to this court by appeal.

From the above statement, we think that the court below left the matter properly to the finding of a jury:

The instruction given first for plaintiff says nothing more, than that if the jury believe from the evidence that the plaintiff has proved the facts of the case as set out in her declaration, then they ought to find for her; we confess, that the wording of the instruction at first struck us as somewhat singular; but we cannot agree to reverse this case upon that instruction.

The second instruction was properly given, and it embraced the whole

case, and put it properly before the jury; and from the evidence before them we cannot well see how the jury could have found a different verdict.

As to the probability of making a few dollars out of the assigned property, had that been pursued, we think that such a course would have been so nearly totally unavailing, as to render it a needless and useless preliminary step for the plaintiff in this case.

But this point under the opinion of this court given in this case, when last before this court, was left to the jury under the instruction given secondly above, and was by them found for the plaintiff. We see no cause to find fault with this finding.

As to the instruction given for the defendant below to the jury requiring them to say on which count of the declaration, they found their verdict (if they should find for the plaintiff) and the jury found against this instruction by finding a general verdict, we feel not disposed to place any weight on this part of the case.

The finding is sufficient. It is not with us as at common law; a finding by a jury with us of a general verdict and assessing general damages will answer if there be a single good count in the declaration; and we can see no propriety in such an instruction.

It may well happen, that the facts as found will not support the allegations in a certain court; and in such case an instruction may be necessary to warn the jury against finding on that count. But this is widely different from the instruction now before us. Suppose the jury feel disposed to find a general verdict for the plaintiff and his declaration has one good count; judgment will not be arrested for such finding. There is nothing in this point worthy of our further notice.

We find no error in the court below in giving the instructions it did for the plaintiff; and we see no cause for setting aside this finding and granting a new trial.

The judgment below will therefore be affirmed.