MAGUIRE, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, December 1, 1903.

1. **PLEADING: Same Cause of Action in Different Counts: Election.** Under our code of practice, the plaintiff may state the same cause of action in different form by separate counts for the purpose of meeting any possible state of the proof, and a general verdict will bar any future suit upon any of the counts. It is not error, in such case, to overrule a motion to require plaintiff to elect upon which count he will rely.

2. **STREET RAILWAYS: Rules of Company: Ordinance.** Street railway companies may make all needful rules in respect to the conduct of their business, including stops at street crossings, not inconsistent with the charter and ordinances of the city, but a rule in relation to stopping cars when behind time, which is opposed to an ordinance requiring all cars to stop at certain points, is unreasonable and can not affect the general public. Such a rule is not admissible in evidence, in an action against a street railway company for injuries received by plaintiff while attempting to board one of defendant's cars at a crossing, as tending to show the motorman did not intend to stop at that point, when the plaintiff had no knowledge of the rule.

3. **CARRIERS OF PASSENGERS: Contributory Negligence: Boarding a Moving Car: Jury Question.** It is not negligence *per se* for one desiring passage, to board a car moving very slowly; whether or not it is negligence in a particular case is a question for the jury.

4. ———: **Passenger Boarding Car: Stopping Car: Instruction.** In an action for injuries received by plaintiff while attempting to board defendant's car, an instruction set out at length and held to correctly declare the law.

5. ———: ———: **Reasonable Stop.** An instruction which declared it negligence, after stopping a car to let a passenger on, to start it before he "had a reasonable time to. get upon said car and to a place of safety therein," and an instruction which declared it the duty of the street railway company to hold "the cars stationary for a reasonable length of time to enable such persons, desiring to board such cars safely, to board such cars," were not inconsistent; the first one did not misstate the law, nor require that the car should be held stationary until a passenger could be seated.

6. **CONTRIBUTORY NEGLIGENCE: Burden of Proof.** An instruction which places the burden of showing contributory negligence by preponderance of the evidence upon defendant, is not erroneous as depriving defendant of the benefit of plaintiff's own evidence tending to prove contributory negligence.

7. **PERSONAL INJURIES: Measure of Damages: Mental Anguish.** In an action for personal injuries, mental anguish that is incident to bodily pain caused by an injury, is a proper element of damages, and may be inferred from the nature of the injury; and when the injury is permanent and future physical and mental pain reasonably certain, and the natural result of the act complained of, they also can be taken into consideration in estimating the damages.

8. ———: **Excessive Verdict.** Where, the injury was a serious impairment of the use of one leg, which at the time of the trial continued to cause severe pain, and the evidence showed that the injury was likely to continue for a long period of time with plaintiff's ultimate recovery doubtful, a verdict for $3,500 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann,* and *George W. Easley* for appellant.

(1) The motion to require the plaintiff to elect on which count he would proceed should have been sustained. Roberts v. Railroad, 43 Mo. App. 289. (2) The first instruction given for the plaintiff is erroneous. It is simply holding the defendant liable for a mistake of the plaintiff—a mistake none of the other fifteen men standing there made—and which the defendant in no manner induced. This can not be good law; it is not common sense. Traction Co. v. Ringgold, 78 Md. 409; 3 Am. Eng. Cas. 731; Broom's Leg. Max. (7 Ed.), p. 268; Deitrich v. Railroad, 58 Md. 347; 3 Am. Neg. Cas. 631; Pickard v. Railway, 145 Pa. St. 195; 23 At. 566; Booth on Street Railways, sec. 336; Holohan v. Railroad, 19 D. C. 316; Railroad v. Houston, 95 U. S. 702; Schepers v. Railroad, 126 Mo. 674; Werbowlsky v. Railway, 86 Mich. 276; 4 Am. Neg. Cas. 114. (3) The plaintiff by his act offered himself as a passenger. That offer did not make him a passenger. Plaintiff could not create the relation of passenger and carrier that way. It took some acceptance of him as a passenger to constitute the relation. If said car was stopping, that only indicated a purpose to accept the passengers offering themselves when the car should in fact be stopped. It is incredible that the motorman expected from ten to fifteen persons to get upon the car while it was "stopping." The fact that said car did not stop is conclusive that the motorman did not intend to take any of the party up as passengers. It is only when the car is stopped to receive passengers that the relation of carrier and passenger begins. Railroad v. James, 69 Ill. App. 600; 2 Am. Neg. Rep. 700; Smith v. Railway, 32 Minn. 1; 4 Am. Neg. Cas. 220; Breen v. Bennett, 8 C. & P. 724. But, where the car does not stop, the relation is not created. The plaintiff could not create the relation by attempting to board the moving car.

Schepers v. Railway, 126 Mo. 665; Schafer v. Railway, 128 Mo. 71. (4) This question of the assumption of the risk of attempting to board a moving car must not be confused with that of contributory negligence. They are distinct. Miner v. Railroad, 153 Mass. 398; 26 N. E. 995; Nellis on St. Rys., pp. 458, 463, sec. 15; Merriweather v. Railroad, 45 Mo. App. 334; Traction Co. v. Ringgold, 78 Md. 409; 2 Am. Neg. Cas. 371; Moylan v. Railroad, 128 N. Y. 583; 27 N. E. 977. (5) The plaintiff not showing any disability at the time he tried to board the car, those in charge of it, had they seen him, would not have been required to wait until he was seated. Railway v. Chappell, 21 Fla. 175; 2 Am. Neg. Cas. 340. The Missouri rule is that they are not required to stop until the passenger is seated, but that they must start in such moderation as not to cause them to be thrown down. Dougherty v. Railroad, 9 Mo. App. 478; 81 Mo. 325; 97 Mo. 647; Bertram v. Railway, 154 Mo. 639; Conway v. Railway, 87 Me. 283; 38 Atl. 112. (6) The third instruction given on behalf of plaintiff is erroneous. It authorizes a recovery for future mental anguish. There was nothing in the nature or character of the accident to cause mental anguish as distinguished from bodily pain. Gerdes v. Iron & Foundry Co., 124 Mo. 361; Haniford v. The City of Kansas, 103 Mo. 172; West v. Forrest, 22 Mo. 344; McMillen v. Union, etc., Works, 6 Mo. App. 434; American Straw Board Co. v. Faust, 12 Ind. App. 421. (7) The giving of the instruction authorizing the jury to give damages for future mental anguish, distinguished from physical pain, there being no disfigurement or distortion of the person— nothing to produce mental anguish as distinguished from physical pain, either in the past or the future of the case—was error. Such damages are not recoverable, and, if they were, there is no evidence of any mental anguish, past or prospective, in the case. The nature and character of the injury do not make it even probable that future mental anguish would ensue.

Railroad v. Spurney, 69 Ill. App. 540; 2 Am. Neg. Rep. 505; Railroad v. Cole, 165 Ill. 334; 46 N. E. 275; Ford v. City of Des Moines, 4 Am. Neg. Rep. 379; Railroad v. Caulfield, 63 Fed. Rep. 399; Bovee v. Danville, 53 Vt. 190. (8) The evidence of mental anguish must rest upon the nature and character of the injury and its natural tendency to produce anguish, and on that alone. Any other rule would open the door to the grossest frauds. Stowe v. Haywood, 7 Allen (Mass.) 124; Brown v. Railroad, 99 Mo. 319; Schmitt v. Railroad, 119 Mo. 277; Voorhees on Meas. of Dam., sec. 93; Richard III, Act 1, Scene 1; Landor's "Leofric and Godiva," p. 61.

*Joseph M. Bryson* and *Lee W. Hagerman* for respondent.

(1) The motion to elect was properly overruled. The law in this State is well settled that the same cause of action may be stated in different counts, and that, unless they are so mutually inconsistent that the proof of one disproves the other, the court will not sustain a motion to elect. Brinkman v. Hunter, 73 Mo. 172-178; Brownell v. Railroad, 47 Mo. 243; Brady v. Connelly, 52 Mo. 19; St. Louis v. Allen, 53 Mo. 49; Owens v. Railroad, 58 Mo. 386; Byrdseye v. Smith, 32 Barb. 217; Bliss, Code Pldg., sec. 120. See McQuillan's Pl. and Prac., 198, 343, 460, and cases there cited; Christal v. Crary, 80 Mo. 367. (2) The evidence offered by the defendant to prove the rule as to a car stopping for passengers when eight minutes late was properly excluded. 27 A. & E. Ency. of Law, p. 784. (3) It is well settled in this State, that street railway companies, by violating the provisions of an ordinance regulating the running of cars, gives to an injured party, who, by his own conduct, is within the pale of the provisions of the ordinance, a cause of action, wholly irrespective of the question whether or not he was technically a pas-

senger within the rules of the common law.  Jackson
v. Railroad, 157 Mo. 621; Hutchinson v. Railway, 161
Mo. 246; Weller v. Railway, 164 Mo. 205; Wendler v.
Peoples' House Fur. Co., 165 Mo. 527; Feeback v. Rail-
way, 167 Mo. 206; McAndrew v. Railway, 88 Mo. App.
·97.    (4)    The third instruction given in behalf of plain-
tiff is correct.  Future mental anguish or suffering is
a proper element for a jury to consider in assessing
damages.  The general rule is that, while mental anguish
—without any sort of physical injury and phy-
sical pain and suffering — can , not be compen-
sated in damages except where, as in libel and
slander, there is, in the nature of the actionable wrong
itself, an element of personal insult and an injury to the
sense of honor and self-respect, yet, where mental
anguish is caused by the presence of physical pain and
suffering, and is connected with physical injury as an
incident, then the jury may consider it in rendering
compensation.  Railway v. Jones, 49 Fed. 343; Ball v.
Mabry, 91 Ga. 781; Railroad v. Johnson, 135 Ill. 641;
Railway v. Newell, 104 Ind. 264; Curtis v. Railroad, 18
N. Y. 534; Weller v. Railway; 53 Hun 372 (6 N. Y.
Supp. 320); Stuts v. Railway, 73 Wis. 147; Trigg v.
Railroad, 74 Mo. 147; Gurdes v. Iron Foundry Co., 124
Mo. 361; Whalen v. Railroad, 60 Mo. 323; West v. For-
rest, 22 Mo. 344; McMillan v. Union Works, 6 Mo.
434; Smitz v. Railroad, 119 Mo. 256; Brown v. Rail-
road, 99 Mo. 319; Am. Show B'd Co. v. Faust, 12 Ind.
421; Bonee v. Danville, 53 Vt. 190; Stone v. Haywood,
7 Allen (Mass.) 124.    (5)    The doctrine of the Mis-
souri cases is that a general verdict is permissible where
the same cause of action is stated in more than one
count, both in civil cases—Owens v. Railroad, 58 Mo.
386; Lancaster v. Ins. Co., 92 Mo. 460; Long v. Ormsby
Co., 43 Mo. App. 253—and in criminal cases—State v.
McCue et al., 39 Mo. 112; State v. Pitts, 58 Mo. 556;
State v. Nolan, 111 Mo. 473; State v. Harmon, 106 Mo.
653.    (6)    Where there is violation of an ordinance,

that in itself is negligence.  The verdict of the jury in
view of the evidence is reasonable, and the appeal court
would not be justified in remanding the case on this
ground.  If it is possible that a reasonable man in view
of the undisputed testimony of injury, against which
the defendant company offered no testimony, not even
calling in their own doctor, who had examined him—
if it is possible that a reasonable, unprejudiced jury
should have thought that $3,500 was not too large a
recompense—then the appellate court should not disturb
the verdict.

BLAND, P. J.—The petition is in two counts.  The
first alleges, in substance, that on November 24, 1902,
plaintiff, desiring to become a passenger on one of de-
fendant's cars bound eastward on Maryland avenue, in
the city of St. Louis, took his stand at the southeast
corner of Euclid and Maryland avenues, the proper and
usual place where defendant's cars stopped to take on
passengers; that when the car approached Euclid
avenue, he signalled the motorman in charge of his de-
sire to become a passenger and the motorman, as he ap-
proached Euclid avenue and crossed the same, slowed
down his car; that on reaching the south crossing where
the plaintiff was standing, the car was slowed down to
a stopping point, leading plaintiff to believe that the car
had stopped to receive him and others standing by who
wished to become passengers, when plaintiff took hold
of the handrail at the rear end of the car and attempted
to board the same, but while he was in the act of getting
on, the defendant negligently, carelessly and recklessly
failed to let the car remain standing a sufficient length
of time to allow plaintiff to get on the car, but started
it forward with great suddenness and speed, whereby
plaintiff was thrown down and dragged some distance,
by reason of which he sustained severe and permanent
injuries.

The first count of the petition also pleaded section 1761, of the city ordinance 19919, of the city of St. Louis, regulating the stopping of street cars to let passengers on or off.

The second count omitted the ordinance, alleged the car came to a standstill. The other particulars are in the first count.

The section of the ordinance pleaded, among other things, provides that street cars operated in the streets of the city shall make stops at certain points for the purpose of letting passengers get on and off the cars. It requires the cars travelling eastward to stop on the east side of the streets intersecting the one on which the car is travelling for the purpose of letting persons get on and off the car.

The answer was a general denial and a plea of contributory negligence. The plea of contributory negligence was put in issue by a reply.

Before proceeding to trial, the defendant moved the court to require the plaintiff to elect upon which count he would proceed to trial. This motion was denied and the case proceeded to trial on both counts.

The evidence offered by the plaintiff tended to prove the allegations as made in both counts of his petition, especially as laid in the first count, that the car did not come to a standstill but that after plaintiff gave the motorman the usual signal to stop, he turned off the power and twisted the brake and when the rear of the car came opposite to where plaintiff was standing, the car was moving very slowly and plaintiff took hold of the handrail with the intention of getting aboard, when the car was suddenly started forward and plaintiff was jerked off his feet and dragged about twenty-five feet. He was then helped or pulled on the car by some one standing on the rear platform. Plaintiff testified that on the spur of the moment, after he was jerked off his feet, the thought came to him to hang on. He further testified that he was hurt in the groin of his left leg;

that the pain became very severe and he went home and went to bed, called a physician who gave him an opiate to relieve the pain and prescribed for treatment hot applications and the use of liniment; that the inside tendons and muscles of his leg were injured and that he had suffered pain on account of the injury from the time of the accident down to the trial; that he was unable to cross his left leg over his right one and was unable to walk as well as he could before the injury. His evidence and the evidence of the physicians who testified in his behalf, tends to show that the use of the left leg had been very much impaired by the injury and that plaintiff continued to suffer pain from the injury and it would require a very long time for the leg to recover and it was questionable if it ever would become a sound leg.

Section 1761, of city ordinance 19919, was read in evidence.

At the close of plaintiff's evidence, defendant again moved the court to require plaintiff to elect upon which count of the petition he would rest his case. This motion was also denied.

The only witness offered by the defendant was the conductor, who, presumably, was on the car when the accident occurred, but he testified he knew nothing whatever of the occurrence. He said his car was eight minutes behind time and that about two months afterwards, at the request of defendant, he made a report of the trip to the defendant. This report was offered in evidence but was excluded by the court. The motorman was no longer in the employ of defendant and could not be found by the defendant's claim agent, but the conductor testified that the motorman was in the city and that he saw him almost daily.

The court gave the following instructions for the plaintiff:

"1. The court instructs the jury that if you find and believe from the evidence that on or about the

twenty-fifth day of November, 1902, the defendant was operating certain lines of street railroads in the city of St. Louis, Missouri, and particularly a double-track line of railroad running east and west on Maryland avenue, past the intersection of Maryland and Euclid avenues, in said city. And if you further find and believe from the evidence that the plaintiff attempted to board one of the defendant's east-bound cars on Maryland avenue, at the intersection of said Maryland and Euclid avenues, and on the east side of said Euclid avenue and south side of said Maryland avenue, at a place where defendant's cars were in the habit of stopping to receive passengers, and that plaintiff, at said time and place, had reason to believe, and did believe, that said car was stopping for passengers to board said car at said place. And if you further believe and find from the evidence that the plaintiff took hold of the handrail of said car at the rear end thereof for the purpose of becoming a passenger on said car. And if you find from the evidence that the defendant's servants in charge of said car knew, or by the exercise of ordinary care, should have known, that plaintiff was attempting to board said car as a passenger; and if you further believe from the evidence that after the plaintiff had so taken hold of the handrail of said car at the rear end thereof for such purpose, the said servants in charge of said car suddenly started the same before the plaintiff had a reasonable time to get upon said car and to a place of safety therein, and that the injury complained of was caused by the failure to stop the car and by such sudden starting of the car under such circumstances; and if you further believe from the evidence that the plaintiff at the time exercised ordinary care in attempting to board the car in the manner shown by the evidence, then your verdict should be for the plaintiff.

"2. The court instructs the jury that at the time said Robert W. Maguire was injured, the city ordinance introduced in evidence imposed upon the servants,

agents and employees of the defendant, while running, conducting or managing the street car in question, the following duties: That they should stop cars going eastward on Maryland avenue on the east side of Euclid avenue for taking on passengers; that they should bring cars going eastward to a full stop on the east side of Euclid avenue at the intersection of Euclid avenue and Maryland avenue whenever requested, signalled or motioned by any person standing at the southeast corner of the intersection of said Maryland and Euclid avenues desiring to board such cars, and in every instance to keep such cars stationary for a reasonable length of time to enable such persons desiring to board such cars safely to board such cars. And if the jury believe from the evidence that the agents, servants and employees of the defendant, while running, conducting or managing said street car upon the occasion referred to, failed to perform any one or more of the duties specified in this instruction, such failure was negligence. And if you believe from the evidence that in consequence of such negligence in any or more of the particulars hereinabove mentioned, the said Robert W. Maguire received the injuries which are complained of in his petition herein your finding should be for the plaintiff, unless you further believe from the evidence that the said Robert W. Maguire was guilty of negligence which contributed to the injury; and the burden of proving contributory negligence on the part of said Robert W. Maguire rests on the defendant, and unless the defendant has proven such contributory negligence by a preponderance of the evidence, you can not find for the defendant on that ground.

"3. The court instructs you, gentlemen of the jury, that if you find for plaintiff you should, in estimating his damages, consider his physical condition before and since receiving the injuries for which he sues, as shown by the evidence, the physical pain and mental anguish, if any, suffered by him on account of his in-

juries at the time of and since said injuries, as shown by the evidence; and for such mental anguish and physical pain and injury, if any, as you may, from the evidence, find it is reasonably certain he will suffer in the future thereform, and you will find a verdict for such sum as in your judgment, will, under the evidence, reasonably compensate him for such injuries.

"4.   The court instructs the jury that the charge of negligence made against the defendant in the plaintiff's petition is that the motorman of defendant's car slowed down the said car to a stopping point, inducing plaintiff to beleive that said car had stopped to receive him as a passenger, and that while plaintiff was in the act of boarding said car the same was suddenly and in violation of the ordinances of the city of St. Louis, started, throwing plaintiff to the ground and injuring him.   With respect to the foregoing charge of negligence you are instructed that the burden is upon the plaintiff throughout the whole case of establishing to your satisfaction, by the preponderance or greater weight of the testimony, that the defendant's car did slow down, either for the purpose of receiving plaintiff as a passenger, or to so slow a speed as to cause the plaintiff to believe that it was slowing down for the purpose of receiving him as a passenger, and that the same was so suddenly started while plaintiff was in the act of boarding the same as to cause him to be injured, and unless the plaintiff has so proven, he is not entitled to recover and your verdict must be for defendant."

The defendant asked and the court refused the following instructions:

"1.   The court instructs the jury that under the law and the evidence in this case the plaintiff can not recover and your verdict must be for the defendant.

"2.   The court instructs the jury that under the pleadings in this case they must find in order for plaintiff to recover that he attempted to board the defendant's car while the same was at a standstill and if they

find at the time plaintiff attempted to board the car the same was moving, then he can not recover and your verdict must be for the defendant.

"3.   The court instructs the jury that if they find from the evidence that the defendant's car was behind time and for that reason did not stop or slow down at the southeast corner of Maryland and Euclid avenues, in the city of St. Louis, Missouri, for the purpose of receiving passengers thereon, but simply slowed down for the purpose of crossing the tracks in said Euclid avenue, and that while passing said southeast corner plaintiff attempted to board defendant's car while it was in motion, and that such effort on the part of plaintiff was negligence under the circumstances, and caused or contributed to his injuries, then he is not entitled to recover and your verdict must be for the defendant.

"4.   The court instructs the jury that if they find from the evidence that the defendant's car was behind time, and for that reason did not stop or slow down at the southeast corner of Euclid and Maryland avenues, in the city of St. Louis, Missouri, for the purpose of receiving passengers thereon, but simply slowed down for the purpose of crossing the tracks in said Euclid avenue, and that while passing said southeast corner plaintiff, without the knowledge of the agents of defendant in charge of its car, attempted to board said car while it was in motion, and that such effort on the part of the plaintiff either caused or contributed to his injuries, then he is not entitled to recover, and your verdict must be for the defendant, even though you should also find that at the time plaintiff attempted to board said car its motion was accelerated or increased."

A verdict for $3,500 in plaintiff's favor was returned signed by nine of the jurors. A motion for new trial proving of no avail, the defendant appealed.

1.   It is contended that the court erred in refusing to compel the plaintiff to elect upon which count of the petition he would stand. Both counts of the petition

state one and the same cause of action, but in a different form. That this may be done has been the settled rule since the adoption of the system of pleadings for the purpose of forming issues of fact for trial in courts having common law jurisdiction and it is admissible under our code of practice for the plaintiff in his petition, to state the same cause of action in different form by separate counts for the purpose of meeting any possible state of the proof, and a general verdict will be a bar to any future suit upon any of the counts. Clemens v. Collins, 14 Mo. 604; Brownell v. Railroad, 47 Mo. l. c. 243; Brady v. Connelly, 52 Mo. l. c. 19; City of St. Louis to use, etc. v. Allen, 53 Mo. l. c. 49; Owens v. Railroad, 58 Mo. l. c. 386. It follows that the plaintiff was not required at any stage of the proceeding to elect upon which count he would rely and no error was committed by overruling either of the motions to require plaintiff to elect.

2. Defendant offered to prove the defendant company had a rule as to cars stopping for passengers when the car was eight minutes late. The court excluded this evidence. This ruling is assigned as error. City ordinance, section 1761, pleaded by plaintiff and offered in evidence, makes no exception in favor of a car that is eight minutes or any other number of minutes behind its running time, but requires all cars, operated in the streets of the city of St. Louis for the purpose of carrying passengers, to make the stops that are required to afford an opportunity for passengers to get on and off the cars when to do so will not obstruct the operation of the line. The street railroad companies were not granted the use of the streets of the city solely for their own emolument and profit, but primarily for the carriage of passengers upon their cars. That they may make and enforce all needful rules and regulations, in respect to the conduct of their business, including stops at street crossings, not inconsistent with the charter and ordinances of the city, is manifest, but they have no

power to bind or affect the public by an unreasonable rule that is opposed to an ordinance of the city, as was the one offered in evidence and excluded by the court. Nor was the rule admissible for the purpose of showing or tending to show that the intention of the motorman in slowing down his car was not to stop or slow down for the purpose of letting plaintiff board the car. The plaintiff could not be affected by the rule, unless he had knowledge of it, nor is he bound by the uncommunicated intentions of the motorman. He had a right to act upon appearances and to attempt to board the car if he gave the usual signal to the motorman to stop, and the motorman, in apparent response to the signal, slowed down the car to a speed so slow that it was not negligence on the part of plaintiff to attempt to board it.

3. Defendant contends that the first instruction given for plaintiff is erroneous for the reasons, first, it does not direct the jury upon which count of the petition it could find a verdict for plaintiff. This objection is answered by the first paragraph of this opinion. The second objection is that the instruction authorized the jury to find for plaintiff on the theory that if plaintiff believed the car was stopping for passengers, he had a right to board the same, irrespective of the speed of the car. This is not a just criticism. Plaintiff's evidence, in respect to the speed of the car, is that the car stopped on the west side of Euclid avenue, then came on across the tracks in Euclid avenue and while the car was crossing the tracks the motorman turned off the power and put on the brakes; that the car was then running very slowly and when it was just abreast of plaintiff, the motorman turned off the power and twisted the brake; that the car was moving very slowly, he could not say at what speed it was running, but he easily caught hold of the handrail and as he did so, the car gave a sudden lurch and went forward. There is no other evidence in the abstract in respect to the speed of the car. If the car was moving very slowly, it was not negligence *per*

*se* for the plaintiff to attempt to board it, as is stated by defendant's counsel in their brief. Whether or not it was negligence was a question for the jury and the instruction told the jury that to authorize a verdict for the plaintiff, they should find that at the time he attempted to board the car, he was exercising ordinary care, hence the instruction is not open to the objection made.

It is further contended that the plaintiff made a mistake in supposing the car had slowed down for the purpose of receiving him as a passenger and should bear the consequences of his own mistake. If he did make a mistake, according to the evidence the mistake was induced by the conduct of the motorman in turning off the power, twisting the brake and slowing down the car at a time and place, and under circumstances, that would induce any one in plaintiff's place to believe as plaintiff believed, that is, that the motorman intended to stop the car to let him and the other eight or ten persons present and waiting for a car to get aboard, and the defendant, not the plaintiff, is responsible for the consequence of the mistake, if plaintiff himself was not guilty of contributory negligence in attempting to board the car while in motion.

4. In addition to the alleged errors contained in the first instruction, it is contended that the second for plaintiff contains the following errors:

"1. That the car going eastward on Maryland avenue should have been stopped at the east side of Euclid avenue. This broad duty is imposed by this instruction without reference to whether there were any passengers there or not, or whether any signal had been given or not.

"2. That defendant should have brought the car to a full stop at the east side of Euclid avenue when signalled, and,

"3. That defendant should have kept the car stationary for a reasonably length of time to enable per-

sons, then desiring to board the car, 'to board' the car.''

These objections are entirely fanciful and a reading of the instruction will dispel each one of them.

5. The first instruction declared it negligence, after stopping the car to let on a passenger, to start it before he '' had a reasonable time to get upon said car and to a place of safety therein.'' The second declared its duty to be to hold the ''cars stationary for a reasonable length of time to enable such persons desiring to board such cars safely to board such cars.'' It is contended that these instructions are inconsistent and that the first misstated the law; that the defendant is not required to hold a car stationary until a passenger can be seated. It is not the rule that the car must be held until a passenger who has just boarded it can be seated. If such a requirement was made of street cars, the carmen would, on account of the crowded condition of the cars, often find themselves in a dilemma. The rule is that the car must be stopped for a reasonable time, that is, time sufficient for a passenger to board the car. Dougherty v. Railroad, 81 Mo. 325; s. c., 97 Mo. 647. We do not think the first instruction runs counter to this rule. The phrases, ''within the car'' and ''aboard the car,'' as used in the two instructions, are synonymous in their application to the situation indicated, and mean nothing more than that the car should be held for a time reasonably sufficient for passengers to reach some place of safety on the car, and we think the jury so understood both instructions.

6. It is contended that the last clause of the second instruction is erroneous for the reason if contributory negligence was shown at all, it was shown by the plaintiff's own evidence, the defendant having offered none on this point; notwithstanding this fact, the burden of showing such negligence was, by the instruction, cast on the defendant, and to show it by a preponderance of the evidence. The point made is that the instruction deprived the defendant of the benefit of plaintiff's own

evidence. In Murray v. Railroad, 101 Mo. l. c. 240, it was held that an instruction, substantially the same as No. 2, where the evidence tending to prove contributory negligence came from the plaintiff, the defendant was not deprived of the benefit of the plaintiff's evidence tending to prove contributory negligence and that the instruction asserted a correct proposition of law. The other objections made to the first and second instructions seem to us to be hypercritical.

7. The instruction on the measure of damages is objected to for the reason that it authorized a recovery for future mental anguish. Mental anguish that is incident to bodily pain caused by an injury, is a proper element of damages and may be inferred from the nature of the injury. Seawell v. Railway, 119 Mo. 222; Brown v. Railroad, 99 Mo. l. c. 319. Mental anguish can be recovered for, co-extensively with physical injury, and so long as the injury continues to give intense pain, mental anguish will be inferred to co-exist. Union Pacific Railway Co. v. Jones, 49 Fed. Rep. 343; Ball v. Mabry, 91 Ga. 781. In this State, the general rule is that pain of body and mind, when connected with physical injury, is a subject of damages. Trigg v. Railroad, 74 Mo. 147. And when the injury is permanent and future physical and mental pain are reasonably certain, and are the necessary and natural result of the act complained of, they are proper elements to be taken into consideration in estimating the damages. State v. Goode, 24 Mo. 361.

8. Such of the refused instructions as are supported by any evidence were comprehended in those given by the court and there was no error committed in refusing them.

9. Complaint is made that the verdict is excessive. The evidence, as to the character and extent of the injury, is all one way and shows a very serious impairment of the use of the left leg and that the injury at times continues to cause severe pain, and further that

the injury is likely to continue for a long period of time and plaintiff's ultimate recovery is doubtful. In this state of the evidence we are not prepared to say that the damages assessed exceed a reasonable compensation for the injury.

The judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.